SPICERS, Inc., et al. v. RUDD.

No. 32801.   Dec. 16, 1947.

Rehearing Denied Jan. 13, 1948.

*188 P. 2d 692.*

Williams & Williams, of Ardmore, for plaintiffs in error.

Ernest W. Tate and J. B. Moore, both of Ardmore, for defendant in error.

BAYLESS, J.   This is an action for damages prosecuted by plaintiff, Thomas Wayne Rudd, a minor, by his father and next friend, against defendants, Spicers, Incorporated, the American Fidelity & Casualty Company, and Vernon Eugene Miller. The jury returned a verdict in plaintiff's favor for $20,000 and judgment was rendered on the verdict against Spicers, Incorporated, and Miller for $20,000 and against the American Fidelity & Casualty Company for $5,000. Defendants have appealed from this judgment. Parties will be referred to as they appeared in the trial court, except the American Fidelity & Casualty Company, when referred to alone, will be called the insurance company.

The defense was a general denial and contributory negligence, and the

insurance company defended on the further ground of defect of parties. Defendants claim that plaintiff failed to establish primary negligence. The evidence of plaintiff shows that Vernon Eugene Miller, while in the employment of Spicers, Incorporated, caused a truck and trailer which he was driving to stop on U. S. Highway 77 between Third and Fourth avenues in the city of Ardmore at about 11 p.m. The highway runs north and south and the avenues east and west. There was a street light at each of the intersections. The light at the south intersection was burning. There is some question as to whether the other street light was burning, but we do not deem this material to the issues here involved. The truck was parked facing south, approximately 100 feet south of the north intersection. The pavement at this point was 36 feet wide, consisting of two ten-foot slabs in the center and an eight-foot slab on each side.

The semi-trailer was parked at an angle toward the center of the pavement so that the rear left wheel of the trailer was one to two feet east of the black line which separated the west eight-foot slab from the ten-foot slab, leaving a space of eight or nine feet between the trailer and the center line of the pavement. No lights were burning on the truck prior to the time of the accident. The driver testified that he did not have any flares with him. However, after the accident and some time during the night, flares were placed around the truck. The night was clear. There is a railroad right of way immediately to the west of the highway. On the east side of the highway between Third and Fourth avenues there is a filling station, an automobile sales place, and what appears to be a small garage. About 11:30 p.m. plaintiff was traveling south on Highway 77 in a pickup Fork truck. Although he owned the truck Billie Whisenhunt was driving at the time. Plaintiff was seated on the right side. Two girls were also in the front seat and one was sitting on plaintiff's lap. As the pickup approached the truck and the trailer the light of a car coming from the south blinded the driver of the pickup so that he did not see the trailer until within ten or fifteen feet of it. He attempted to veer to the left to miss it but the right side of the pickup scraped against the corner of the trailer, causing serious injury to the plaintiff's right arm. The driver of defendant's truck was resting in the cab when the accident occurred. The driver testified there were two reflector plates on the rear of the trailer, but all of the occupants of the car denied seeing them.

Plaintiff relies on the case of Ross v. Gearin, 145 Okla. 66, 291 P. 534. The facts in that case are very similar to the facts under consideration. In holding that the question of negligence was properly submitted to the jury in that case we said:

"The determination of what is, or is not negligence, is for the jury unless the facts are such that all reasonable men must draw the same conclusion."

In Shefts Supply Co. v. Purkapile, 169 Okla. 157, 36 P. 2d 275, another case similar to the one at bar, we said:

" . . . In our opinion the trial court could not say that the course of conduct pursued by the agents of the defendants was one which a careful and reasonably prudent person would pursue without question. The question was therefore properly submitted to the jury, and we find no fault with the court's instructions to the jury upon this point."

Defendants rely on the case of Boucher v. Groendyke Transport Co., 195 Okla. 483, 160 P. 2d 403. In that case the truck was parked in the business district of a town close to and parallel to the curb and within 30 feet of a street light. In affirming the judgment for the defendant, we held therein:

"Under ordinary circumstances one driving a motor vehicle has the right to park at designated places not otherwise prohibited by the city ordinances.

of said city, and there is nothing in 47 O. S. 1941 §131 requiring such vehicle properly parked to be lighted in compliance with said section."

We cannot say as a matter of law that defendant's truck was properly parked or that failure to keep the truck lights burning or to place flares around the truck was not negligence.

Defendants also urge that they merely created a condition which gave rise to the occasion by which the injury was made possible; that the acts of the driver of plaintiff's car were an intervening cause; and that defendant's act was the remote cause. In 45 C.J. 932, §491, it is said:

" . . . But where the condition was such that the injury might have been anticipated, or where such condition rendered it impossible to avoid injury from another contributing cause, it will be the proximate cause notwithstanding the intervening agency. . . ."

We said in Stephens v. Oklahoma City Ry. Co., 28 Okla. 340, 114 P. 611, at page 346:

" . . . The rule seems to be that where the negligent act causes consequences such as in the ordinary course of things were likely to arise, and which might, therefore, reasonably be expected to arise, or which it was contemplated by the parties might arise, liability follows; otherwise not. . . ."

We hold that the court did not err in submitting the question of negligence and proximate cause to the jury.

Defendants complain that the trial court committed error in refusing to give their requested instructions Nos. 2, 3, and 4. These instructions would have advised the jury that defendant Miller had the right to park the truck and trailer at the place where it was parked; that defendants, were not required to keep lights burning thereon or to place flares around the truck and trailer. In view of our holding on the question of primary negligence it is plain that these questions were for the jury to pass on and not for the court. Defendants' requested instruction No. 10, that it is negligence to drive an automobile on a dark night at such speed that it cannot be stopped or turned aside within the distance that objects can be seen ahead of it, was covered by instruction No. 10 given by the court which advised the jury that it is negligence to drive a vehicle upon a highway at a speed greater than will permit the driver to bring it to a stop within the assured clear distance ahead. This instruction was copied verbatim from the statute (47 O.S. 1941 §92). The court refused to give defendants' instruction No. 13 which was as follows:

"It is the duty of a driver of an automobile traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover obstacles in his path in time for his own safety . . . ."

There is no evidence in the record that the lights of the car were defective or were not burning at the time of the accident. Whisenhunt, the driver of the pickup truck, testified that the lights were good and that they were both burning at the time of the accident. Wayne Hitt, who was riding in the rear of the pickup, corroborated this statement. Refusal to give this instruction was not error since it was not supported by competent evidence.

The insurance company raises the issue that three persons were injured in the accident; that plaintiff recovered judgment against it for $5,000; that the amount of the recovery of the other two injured persons was uncertain; that under the terms of the insurance policy its liability for bodily injury was $10,000 for one accident and $5,000 for one person; and that all three of the injured parties should have been united in one action. At the oral argument counsel for plaintiff suggested that settlement had been made with one of the other injured parties for $1,500 and the third person injured in the accident had recovered a judgment for $3,500. On the same date he filed

a pleading herein entitled "Suggestion of Issues Having Become Moot." Counsel for defendants has not questioned the correctness of this statement, and since more than two years has elapsed since the date of the accident, and it does not appear that the insurance company has been prejudiced by failure to join all the parties, we will not pass upon this question.

Defendants also complain that the verdict and judgment based thereon allow an excessive recovery. The evidence shows that plaintiff received a fracture to the bone in the upper part of his arm, also a fracture to the radius in his forearm which fits into the elbow socket; that the dislocation of the bone at the elbow had been reduced by cutting off the end of the bone and replacing the cut-off end where the joints should be; that he received a compound fracture of both bones in the forearm and a large portion of the muscle of the forearm had either been torn out or come out due to infection; that he has a permanent loss of 85 to 90 per cent of the function of the right arm; that he can use the arm as a hook, but it has no lateral or rotary motion. He also lost one finger from his left hand. He suffered severe pain as a result of the injury. He had a series of operations and his expenses for medical, hospital, and doctor bills are approximately $1,500. At the time of the accident plaintiff was 18 years of age and a senior in highschool. For several summers past he had worked during vacation for Liebmann's Ice Company in Oklahoma City delivering ice for a commission and had earned from $250 to $300 a month during the summer vacation. He was a good basketball player and had received an offer of an athletic scholarship and expected to receive his college education by means of taking an active part in athletics. In Magnolia Pipe Line Co. v. Brown, 195 Okla. 345, 157 P. 2d 184, we said:

" . . . There can be no absolute standard to measure such damages, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award. And in an action for personal injury a verdict will not be set aside for excessive damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence or prejudice, or has totally mistaken the rules of law by which damages are regulated."

In determining whether a judgment is excessive, each case must be judged largely by its own circumstances. Kelly v. Cann, 192 Okla. 446, 136 P. 2d 896. Plaintiff's demonstrated ability to earn money by use of his hands and other talents was unusually high. He was not a professional man. The jury had the right to consider these various factors and they undoubtedly did. We cannot say from the evidence the verdict was the result of passion or prejudice.

The judgment is affirmed.

HURST, C.J., and WELCH, GIBSON, and LUTTRELL, JJ., concur.